IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN BENTLEY,

    Petitioner,

  v.

A.P. KANE, Warden;
JAMES DAVIS, Chairman,
Board of Parole Hearings,

    Respondents.
_____/

No. C 06-1952 CW (PR)

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS

Petitioner John Bentley,[1] proceeding <u>pro se</u>, has filed a petition for a writ of habeas corpus pursuant to title 28 U.S.C. § 2254, challenging as a violation of his constitutional rights the denial of parole by the California Board of Parole Hearings (Board).[2]

---

[1] When Petitioner filed his petition, his name on the caption was spelled as "Bently;" therefore, the Clerk of the Court used that spelling on the court file and the Court's ECF database. The record shows that the correct spelling of Petitioner's name is "Bentley," which is how Petitioner spells his name on the signature line of his petition and traverse. (Pet. at 7; Traverse at 12.) Accordingly, the Court directs the Clerk to correct the spelling of Petitioner's name to "Bentley."

[2] The Board of Prison Terms was abolished effective July 1, 2005, and replaced with the Board of Parole Hearings. Cal. Penal Code § 5075(a).

Respondents have filed an answer.[3] Petitioner has filed a traverse. Having considered all of the papers filed by the parties, the Court DENIES the petition.

BACKGROUND

In November, 1990, a jury found Petitioner guilty of second degree robbery and kidnapping to commit robbery.[4] (Resp't Ex. 1, Abstract of Judgment at 1.) The Los Angeles County Superior Court sentenced him to life with the possibility of parole. (Resp't Ex. 3, Subsequent Parole Suitability Hearing Transcript at 1.) Petitioner began serving his sentence on February 7, 1991, and his minimum eligible parole date was September 10, 1997. (Id.)

At Petitioner's sixth parole suitability hearing on June 3, 2004, the Board considered the following information, derived from the Los Angeles County Probation Officer's Report, about the kidnaping and robbery:

> The victim, who describes himself as being diabetic and in need of food at the time of the alleged offenses, left his business location at about 11:30 p.m. on October 20, 1990 en route to home with the intention of taking care of his medical condition.
>
> In proceeding to an automobile parked nearby, the victim

---

[3] The State claims that under Rule 2(a) of the Rules Governing Habeas Corpus Cases Under Section § 2254, the proper respondent is A.P. Kane, the warden at the Correctional Training Facility where Petitioner is incarcerated. (Answer at note 1.) In its October 26, 2006 Order, the Court noted that it was the State's practice in prisoner petitions challenging parole decisions to designate James Davis, the Chairman of the Board of Parole Hearings as the proper Respondent. Accordingly, the Court substituted him as Respondent. The Court directs the Clerk of the Court to include Kane and Davis as Respondents in this action.

[4] In 1991, the California Court of Appeal stayed his sentence for second degree robbery. (Pet. at 3.)

2

> reportedly was confronted with the armed defendant who pointed a handgun at the victim's head and demanded the keys to the victim's vehicle. Fearing for life and safety, the victim complied by giving the keys to the defendant who then ordered the victim to enter the vehicle which defendant proceeded to drive away from the location. The vehicle was subsequently driven to an upon [sic] a freeway where it was stopped. With the handgun pointed at the victim's head, the defendant proceeded to demand the victim's wallet and money and, further fearing for life and safety, the victim complied. At this point, the victim was ordered to exit the vehicle which was driven from the location leaving the victim along the freeway. The victim then proceeded to a call box and contacted police.
>
> At about 10:59 p.m. on October 28, 1990, patrolling police officers observed a parked vehicle in proximity to closed businesses. Considering this to be suspicious, police proceeded to investigate and determined a stolen status for thef [sic] vehicle. Police then confronted an occupant, identified as defendant asleep inside the vehicle. Defendant was arrested and subsequently identified himself with different names and dates of birth. The vehicle was determined to be the property of the victim. Defendant declined a statement to police but made a spontaneous statement of only stealing a car and not robbing anyone. The victim subsequently identified the defendant as the assailant on October 20, 1990.

(Resp't Ex. 2, Probation Officer's Report at 2-3.)

Petitioner's disciplinary history consists of six rules violation reports (CDC-115) and six disciplinary memos (CDC-128) while incarcerated. (Id. at 27, 29.) He received his most recent CDC-115 on October 6, 2002, for refusing to move. (Id. at 27.) The remaining CDC-115s were for refusing to report to work, engaging in mutual combat with a cellmate in 1996, failing to report in 1993 and 1994, and possessing contraband (sandpaper) in 1993. (Id. at 28.) His six CDC-128s were for failing to report, smoking, and having an unexcused absence. (Id. at 29.)

While incarcerated, Petitioner has participated in various vocational courses. In 1997, he completed a vocational course in dry cleaning. (Id. at 23.) He participated in, but did not

3

complete, three other vocational courses in air conditioning, refrigeration and radiology, as well as welding and metal fabrication. (Id. at 24.)

Petitioner earned his GED in 1994. (Id. at 23.) He worked in the laundry prior to being assigned as a tutor, receiving average work reports and a couple of laudatory chronos. (Id.) At the time of his sixth parole suitability hearing, Petitioner was working as a woodworker at the Prison Industry Authority (PIA), where he was earning satisfactory work reports. (Id.) Since 1996, he has continued to participate in Alcoholics Anonymous (AA). (Id. at 25.) He has also participated in Narcotics Anonymous (NA) and various other self-help programs, including Reintegration Into Society, Lifeplan for Recovery, Prison Fellowship, Anger Management, and Creative Options. (Id. at 25-27.)

In addition to Petitioner's prison record, at his sixth parole suitability hearing, the Board considered his prior criminal record, social history, parole plan, files and prior transcripts, as well as any new psychiatric reports. (Id. at 4-5.)

The Board reviewed Petitioner's personal background, noting that he has an unstable social history that includes separation of his parents when he was nine, followed by intermittent foster care. (Id.) Petitioner smoked marijuana at age twelve and abused alcohol at age fourteen. (Id.) He dropped out of high school in the eleventh grade. (Id.) Also, as a teen, he became addicted to cocaine and had an "approximately $150.00 a day habit." (Id.)

Petitioner testified that if the Board granted parole he intended to live with his mother, Marilyn Luce, in San Bernardino County. (Id. at 32.) His stepfather, Mike Luce, wrote to the

4

Board to confirm that Petitioner was guaranteed a job with D and L roofing company. (Id. at 34.) His brother also wrote a letter asking the Board to grant Petitioner parole. (Id. at 35.) Petitioner stated that he planned to attend AA and NA if released on parole. (Id.) He also informed the Board that he had been studying real estate for the past six or seven years, and that he planned eventually to pursue a career in real estate. (Id. at 37.)

The Los Angeles County District Attorney's Office opposed granting Petitioner parole. (Id. at 45-47.) The Deputy District Attorney suggested that parole be denied because Petitioner had "one of the worst social histories [the Deputy District Attorney] has seen." (Id. at 45.) He pointed out that while Petitioner attended AA, Petitioner still needed to overcome his addiction problem:

> . . . I would think that he, the inmate, could gain some insight into learning the steps, if for no other reason than because it is one expression -- It goes further than just to listen to these individuals express their life experiences. It's the steps that have encouraged these individuals to express their life experiences and to tell the listening audience how they cope with their stresses. And I don't think this individual has learned anything in terms of coping with stress or of doing things according to the way they should be done. He in essence is going to do it his own way, regardless.

(Id. at 48.)

The Board reviewed Petitioner's psychological report dated November 8, 2002, which indicated that his violence potential within a controlled institutional setting was "significantly below average relative to the inmate population." (Id. at 29.) The Board found the psychological report "inconclusive" because it did not mention Petitioner's CDC-115 on October 6, 2002. (Id. at 55.) The Board considered a more recent February 17, 2004 Correctional

5

Counselor's report that Petitioner posed "a high degree of threat to the public." (Id. at 30-31.) The report concluded that Petitioner's "unwillingness to follow the rules in the institution" may reflect what he would do in the community. (Id.)

After a brief deliberation, the Board concluded that Petitioner was "not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Id. at 53.) The Board issued a one-year denial of parole. (Id.) In support of its decision, the Board cited the "dispassionate" and "especially cruel and callous manner" in which the commitment offense was carried out. (Id.) The Board also stated that Petitioner had an unstable social history. (Id. at 55.) The Board stated that Petitioner had an "escalating pattern of criminal conduct" and had "failed to profit from society's previous attempts to correct his criminality," including juvenile probation, juvenile camp, adult probation and county jail. (Id. at 54.) His juvenile record consists of three burglary arrests, two runaways, and a vehicle theft. (Id.) As an adult, Petitioner was convicted of burglary and four counts of forgery before the commitment offense. (Id.) Finally, the Board noted that Petitioner's parole plans were "okay." (Id.)

The Board, while acknowledging Petitioner's participation in AA since 1996, noted its concern that he was "just going through the motions" and not gaining the necessary insight. (Id. at 57.) The Board recommended that Petitioner participate in self-help and substance abuse programs "to discuss, understand, and cope with stress in a non-destructive manner." (Id. at 55.) The Board felt that "[u]ntil progress is made, the prisoner continues to be

unpredictable and a threat to others." (Id.) The Board concluded by commending Petitioner on his above average work reports in the PIA furniture factory, on receiving his GED, and on his participation in self-help programs. (Id. at 55-56.) However, the Board found that these positive aspects did not outweigh the unsuitability factors. (Id. at 56.) The Board encouraged Petitioner to "remain disciplinary free, continue to participate in self-help and substance abuse programs, and cooperate with clinicians in the completion of a new clinical evaluation for the next hearing." (Id.)

Petitioner filed a petition for a writ of habeas corpus with the Los Angeles County Superior Court challenging the Board's decision. On October 27, 2004, the superior court denied the petition, finding that "the record contains 'some evidence' to support the Board's finding that Petitioner is unsuitable for parole," based on his unstable social history and his participation in "serious misconduct while incarcerated, most recently in 2002." (Resp't Ex. 4 at 1.) The court also found inconclusive the November, 2002 psychological report where the evaluator concluded that Petitioner would pose no greater risk in the community than the average citizen. (Id. at 2.) The court found that it was not clear if the evaluator fully considered Petitioner's disciplinary record since incarceration, including his most recent disciplinary violation. (Id.) The court rejected the Board's conclusions that Petitioner was unsuitable for parole based upon the circumstances of the commitment offense and his past criminal history, stating:

> There is no evidence in the record that the commitment offense was "especially heinous, atrocious, or cruel in manner." (Cal. Code Regs., tit. 15, §2402(c)(1).)

7

> Further, while the record reflects Petitioner did have a criminal record prior to the commitment offense, there is no evidence that Petitioner had previously "inflicted or attempted to inflict serious injury on a victim." (Cal. Code Regs., tit. 15, §2402(c)(2).)

(*Id.*)

After the California Court of Appeal and California Supreme Court issued summary denials, Petitioner brought this federal habeas petition.

## LEGAL STANDARD

Because this case involves a federal habeas corpus challenge to a state parole eligibility decision, the applicable standard is contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002).

Under AEDPA, a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000). A federal court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1).

Respondents concede that Petitioner has exhausted his state remedies by filing the petition for a writ of habeas corpus in the California Supreme Court. Where, as here, the highest state court to reach the merits issued a summary opinion which does not explain the rationale of its decision, federal court review under

§ 2254(d) is of the last state court opinion to reach the merits. Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of Petitioner's claim is the opinion of the Los Angeles County Superior Court.

DISCUSSION

I. Jurisdiction

Respondents argue that the Court does not have subject matter jurisdiction on the grounds that denial of state parole does not affect a liberty interest protected by the United States Constitution. However, the Ninth Circuit has rejected the contention that California prisoners have no liberty interest in parole and thus have no federal due process rights in connection with parole eligibility. Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006). Therefore, the Court has subject matter jurisdiction under 28 U.S.C. § 2254 to decide whether Petitioner's Fourteenth Amendment right to due process was violated by the Board's determination that he was not suitable for parole.

II. Due Process Claim

Petitioner asserts that his due process rights were violated by the Board's decision to deny parole because that decision was not supported by "some evidence." (Pet. at 2.) Petitioner's claim fails.

Because California prisoners have a constitutionally protected liberty interest in release on parole, they cannot be denied a parole date without the procedural protections necessary to satisfy due process. McQuillion, 306 F.3d at 902. A parole

9

board's decision must be supported by "some evidence" to satisfy the requirements of due process. <u>Superintendent v. Hill</u>, 472 U.S. 445, 455 (1985); <u>McQuillion</u>, 306 F.3d at 904; <u>Morales v. California Dep't of Corrections</u>, 16 F.3d 1001, 1005 (9th Cir. 1994), <u>rev'd on other grounds</u>, 514 U.S. 499 (1995). The evidence underlying the board's decision must have some indicia of reliability. <u>McQuillion</u>, 306 F.3d at 904; <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d 1389, 1390 (9th Cir. 1987).

In denying Petitioner's request for parole, the Board first cited as evidence the especially cruel, callous and dispassionate nature of the commitment offense by stating:

> . . . the victim Alan Wong was locked into his automobile when the prisoner Bentley approached him with a handgun pointed at his head and demanded the keys to the vehicle. The victim gave the prisoner the keys because he was in fear of his life and safety. The prisoner also demanded that the victim get into the vehicle with him. They drove off together. They drove down the freeway for a distance, at which time the prisoner stopped on the freeway and asked the victim for his wallet and money. He took the money, then told the victim to get out of the vehicle, and the prisoner drove off with the victim's vehicle. He was arrested in the vehicle approximately eight days later. The victim was not physically injured during the robbery.

(Resp't Ex. 3 at 53-54.)

As mentioned above, the Board cited as evidence Petitioner's escalating pattern of criminal conduct, psychological assessment, and most recent CDC-115 on October 6, 2002. (<u>Id.</u> at 54-55.) The Board also cited Petitioner's unstable social history and need for more self-therapy before release. (<u>Id.</u> at 54.) Petitioner completed various vocational programs and participated in personal self-help as well as substance abuse programming. (<u>Id.</u>) However, the Board noted that the positive aspects of Petitioner's profile

10

did not outweigh the unsuitability factors. (Id. at 56.)

Petitioner argues that the Board's finding that the nature of his offense outweighed the positive aspects of his profile was not supported by the evidence. He relies on Biggs v. Terhune, 334 F.3d 910, 915-16 (9th Cir. 2003).

In Biggs, the Ninth Circuit found that parole denial based solely on the gravity of the commitment offense can initially satisfy due process requirements, and that the "some evidence" standard could be satisfied by the Board's consideration of the gravity of the offense. However, in dicta, the Biggs court held that courts may also consider the parole board's decision-making process over time: "The Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . . A continued reliance in the future on an unchanging factor . . . runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs, 334 F.3d at 916-17.

The Ninth Circuit has not specified the number of denials or the length of time served beyond the minimum sentence that would constitute a due process violation. Petitioner had been denied parole by the Board five times; this was his sixth parole suitability hearing. In Irons v. Carey, the Eastern District of California court granted a habeas petition challenging the Board's denial of parole after a similar number of parole hearings where the petitioner had served sixteen years of a seventeen years to life sentence for second degree murder with a two-year enhancement for use of firearm where all factors indicated suitability for parole; however, the Ninth Circuit reversed. 358 F. Supp. 2d 936,

947 (E.D. Cal. 2005), rev'd, 505 F.3d 846 (9th Cir. 2007) (given the egregiousness of the commitment offense, due process not violated when Board deemed petitioner unsuitable for parole prior to expiration of his minimum term). In another case, the Eastern District court granted a habeas petition, finding a due process violation in the denial of parole at the petitioner's twelfth parole suitability hearing after he had served twenty-four years of a sentence of life with the possibility of parole for first degree murder where all factors indicated suitability for parole. See Johnson v. Finn, 2006 WL 195159, *12 (E.D. Cal. 2006); appeal docketed, No. 06-17042 (9th Cir. Oct. 30, 2006). The Ninth Circuit has recently reversed a district court's habeas denial, upon finding a due process violation based on the governor's reliance on the "unchanging factor" of the gravity of the commitment offense to reverse the Board's grant of parole. See Hayward v. Marshall, 512 F.3d 536, 547 (9th Cir. 2008). The Board had granted parole at the petitioner's eleventh parole suitability hearing after he had served twenty-seven years of a fifteen years to life sentence for second degree murder. Id. The Ninth Circuit found that the governor's reversal of the Board's decision was not supported by any evidence that the petitioner's release would threaten public safety. Id.

The Board here relied on more than the "unchanging factor" of Petitioner's commitment offense and criminal history in denying him parole. Although the "cruel and callous" nature of Petitioner's commitment offense and his criminal history weighed heavily in the Board's determination, his unstable social history, his prison disciplinary history, his abuse of alcohol and illegal

12

drugs, as well as the district attorney's opposition also counseled against parole. (Resp't Ex. 3 at 53-59.) The Board's conclusion that Petitioner needed more exposure to self-help and substance abuse programs to understand and cope with stress contributes to "some evidence" for denying him parole. (Id. at 55.)

The Los Angeles County Superior Court concluded that the record contained "some evidence" to support the Board's finding that Petitioner is unsuitable for parole. (Resp't Ex. 4 at 1.) The California state courts' denial of Petitioner's claim was not contrary to, or an unreasonable application of, controlling federal law, nor based on an unreasonable determination of facts. See 28 U.S.C. § 2254(d). Accordingly, Petitioner is not entitled to relief, and his due process claim is DENIED.

The Ninth Circuit's evolving guidance in Biggs, Sass, Irons, and Hayward suggests that the Board can continue to evaluate static factors, including the nature of the commitment offense and pre-conviction criminality, in deciding whether to grant parole. See Sass, 461 F.3d at 1129. The weight to be attributed to those immutable events, however, should decrease as a predictor of future dangerousness as the years pass and the prisoner demonstrates favorable behavior. See Biggs, 334 F.3d at 916-17; Irons, 505 F.3d at 851. Should Petitioner continue to follow the Board's advice by attending self-help programming and maintaining a positive disciplinary record, continued parole denials based on Petitioner's commitment offense alone could eventually give rise to a due process violation. See Biggs, 334 F.3d at 916-17; Hayward, 512 F.3d at 547.

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The Clerk of the Court shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: 3/13/08

_____
CLAUDIA WILKEN
United States District Judge

|   |   |   |
|---|---|---|
| 1 | UNITED STATES DISTRICT COURT | |
| 2 | FOR THE | |
| 3 | NORTHERN DISTRICT OF CALIFORNIA | |

JOHN BENTLY,　　　　　　　　　　　　　　　　　　　Case Number: CV06-01952 CW

　　　　　Plaintiff,　　　　　　　　　　　　　　　　**CERTIFICATE OF SERVICE**

　v.

A.P.KANE et al,

　　　　　Defendant.
　　　　　　　　　　　　　　　　　　　　　　　／

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 13, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

John Bently E-83807
ED-176U
P.O. Box 689
Soledad, CA 93960-0689

Patricia Webber Heim
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004

Dated: March 13, 2008

　　　　　　　　　　　　　　　　　　Richard W. Wieking, Clerk
　　　　　　　　　　　　　　　　　　By: Sheilah Cahill, Deputy Clerk